## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**DARRICK LIVAS, SR., DARRICK**                        **CIVIL ACTION**
**LIVAS JR., CANTRELL LIVAS AND**
**DERRICK WALKER**

**VERSUS**                                         **NO. 12-912**

**ACE AMERICAN INSURANCE**                   **SECTION "K"(5)**
**COMPANY, HEARTLAND EXPRESS.**
**INC. OF IOWA AND RYAN**
**PAHLKOTTER**

## ORDER AND OPINION

Before the Court is the "Motion for Partial Summary Judgment on Liability" filed on behalf of plaintiffs Darrick Livas, Sr., Darrick Livas, Jr.,  and Cantrell Livas (Doc. 25).  The Court previously granted plaintiff Derrick Walker's motion to join in the motion for partial summary (Doc. 36).  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, DENIES the motion.

Background

This litigation involves a motor vehicle accident between an automobile driven by plaintiff Darrick Livas, Jr. and an 18-wheel truck owned by defendant Heartland Express Inc. of Iowa and driven by Ryan Pahlkotter.  The accident occurred as both vehicles were entering the left-lane entrance ramp to I-10 West off North Claiborne Avenue in New Orleans, Louisiana.  Plaintiffs contends that the truck operated by Mr. Pahlkotter in the right hand lane "suddenly and without warning . . . switched lanes in an attempt to enter the ramp thereby colliding with the plaintiff on the on-ramp to the I-10 west entrance." Doc. 25, p. 3.  Plaintiffs assert that Mr. Pahlkotter is solely at fault in causing the accident. In support of that assertion plaintiffs point to the fact that the police

officer who investigated the accident issued Ryan Pahlkotter a ticket for improper lane usage which he paid without contesting. Defendant opposes the motion for summary judgment on liability contending that a genuine issue of material facts exists as to the comparative fault of Darrick Livas, Jr.

## Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996),  citing  *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).   When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.   The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

 "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson  v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Summary judgment evidence must be "viewed in the light most

favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010).

Law and Analysis

It is undisputed that in this diversity case, Louisiana law applies. *See Erie R. Co. v. Thompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.1188 (1938). Under Louisiana law "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. Civ. Code art. 2315. Additionally, Louisiana has adopted a comparative fault scheme. Louisiana Civil Code Article 2323 specifically provides, in pertinent part, that "[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined . . .." Therefore, more than one party may be at fault for damages resulting from a motor vehicle accident. Plaintiffs are entitled to summary judgment on the issue of liability only if there is no genuine issue of material fact as to the issue of the comparative fault of Darrick Livas, Jr.

Louisiana law provides that "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." La. Rev. Stat. 32: 79(1). Thus, it is well settled that "a driver of a vehicle cannot suddenly change lanes without first determining whether it is safe to do

3

so." *Guillory v. Bledsoe*, 2008 WL 1819983, *3 (MD La. April 21, 2008). "When there is a change of lanes by a motorist immediately preceding an accident, the burden of proof is placed upon the motorist changing lanes to show that it first ascertained that his movement could be made safely and the resulting collision did not result from a sudden change of lanes. *Id.* It is also axiomatic that a motorist has a duty to see what he should have seen. In discussing this duty, the Louisiana Supreme Court opined: "[t]he jurisprudence provides, '[i]f a motorist fails to see what he should have seen, the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did not see what he should have seen." *Fontenot v. Patterson Insurance*, 23 So.3d 259, 269 (La. 2009).

The Court begins its analysis by noting that "[t]he mere fact that a motorist received a citation and paid it, without also entering a guilty plea, does not establish fault." *Langhoff v. United States*, 805 F.Supp. 2nd 272, 277 (E.D. La. 2011).

Because plaintiffs are entitled to summary judgment on liability only if Ryan Pahlkotter is solely at fault in this accident, the Court's analysis will focus on whether defendants have offered any competent summary judgment evidence raising a genuine issue of material fact concerning negligence on the part of plaintiff Darrick Livas, Jr. In his deposition, Mr. Pahlkotter described the accident as follows:

> A. He stop –I came– I was– I came up to an intersection right before the ramp, I believe it is the last intersection with a light. I stopped at that intersection. They were coming from my left, turning left onto Claiborne, which is a two-laned road one way. After they made that turn, they went about, I would guess, maybe 500 feet or so, stopped in that lane, and put their four-ways on.
>
> Q. And again what do you mean by four-ways?
>
> A. The – their hazard lights.

4

> Q.  Okay.
>
> A.  And so they stopped.  I was in the left lane when the light turned green, so I went through.  I passed them on the right and I put my blinker on to go back into the left lane.  At that point they had their hazard lights off and were just behind my truck, and they gave me enough room to get over into that left lane.  But from the left lane up towards the ramp is where things got even tighter, *and I thought they were letting me in so I kind of crept forward still,* and at that point they seemed to speed up little bit and steer into my trailer tires on the driver's side.

Doc. 25-5, Ex. 2, p. 26-27 (Depo. of Ryan Pahlkotter) (emphasis added).   That description provides competent summary judgment evidence that: 1)  Mr. Pahlkotter had his blinker on; 2) that the vehicle driven by Mr. Livas was behind the truck; 3) that the vehicle driven by Mr. Livas gave Mr. Pahlkotter enough room to cross into the left lane; and 4) that the vehicle driven by Mr. Livas then sped up and steered to the right.

Mr. Pahlkotter's description of the accident differs from  that recounted by Darrick Livas, Jr. and Darrick Livas, Sr.  a passenger in the front passenger seat of the vehicle being his son Darrick Livas, Jr., and is not entirely consistent with the description of the accident in the accident report. Darrick Livas, Jr. stated in his deposition that:

> A.  And he got over to the right lane, which I thought he was going to pass me.  I'm in the lane to enter the onramp.  It's a one-way entrance to go onto the ramp.  And he sped up as if he was passing me up, but at the very last minute, he just got over.  And when he hit the car, I tried to go to my left to get away from him.  But I noticed they didn't have no more room, and he just continued to coming over, and he hit me again for the second time.

Doc. 44, Ex. A, p. 23 (Depo. of Darrick Livas, Jr.).  When counsel for defendants deposed Darrick Livas, Sr., the following colloquy occurred:

> Q.  Prior to your noticing the vehicle just before impact, did you notice that 18-wheeler at all?

5

A.  Yeah.  He was like passing us up.  And, like, we was in the left lane.  He was in the right lane.  Like Darrick stated, he looked like he was going straight.  And I don't know if he noticed at the last minute that, Oh, I needed to get on this intersection.  He merged over.  And as he merged over, he hit us.

Doc. 44, Ex. B, p. 26-27 (Depo. of Darrick Livas, Sr.).

The accident report states in pertinent part:

Driver of Vehicle One [Ryan Pahlkotter] informed Officer Guggenheim that he was traveling in the left lane of North Claiborne Avenue.  He was behind Vehicle Two [vehicle driven by Darrick Livas, Jr].  Vehicle Two began merging onto the Interstate 10 West on ramp.  Vehicle On [sic] began passing Vehicle Two on the right side of Vehicle Two.  Driver of Vehicle Two appeared to be slowing to allow Vehicle One to merge left onto the on ramp.  The left side of Vehicle One struck the right side of Vehicle Two.  Driver of Vehicle One noticed Vehicle Two had swerved to the right.  This action was possibly to avoid striking the curb on the left side according to the driver of Vehicle One.
The crash occurred at a speed of approximately fifteen miles per hour.
     Driver of Vehicle Two informed the reporting officer he was traveling west in the left lane of North Claiborne Avenue.  He entered the on ramp of Interstate 10 West.  The right side of Vehicle Two was struck by the left side of Vehicle One.  Vehicle One was in the left lane of North Claiborne Avenue then changed lanes into the Interstate 10 West on ramp.

Doc. 25, Ex. 1, p. 9.  Mr. Pahlkotter submitted an affidavit in which he addresses the accident

description contained in the accident report.  The affidavit states, in pertinent part:

5.

As I testified the first paragraph [of the accident report] referring to the statements of Driver of Vehicle One, are "mostly accurate."  From reviewing the report, it appeared to me that "Vehicle One" refers to my tractor trailer, and "Vehicle Two" refers to the other vehicle involved in this accident.

6.

The statement in the police report attributed to me which says "Driver of Vehicle Two appeared to be slowing to allow Vehicle One to

6

merge left on the ramp" is not verbatim of what I told the investigating officer. However, it accurately represents that I observed the other vehicle involved in this accident slowing down. I interpreted this maneuver as an indication that it was safe to move towards my left.

7.

The statement in the police report that "Driver of Vehicle one noticed Vehicle Two had swerved to the right" is not verbatim of what I told the investigating officer. However it accurately represents that I observed the other vehicle involved in this accident swerving to its right, and towards my lane before impact.

Doc. 35, Ex. 1, p. 2-3.

Mr. Pahlkotter's version of the facts differs substantively from plaintiffs' description of the facts. Ultimately, the credibility of the witnesses to the accident, all of whom are parties to the litigation, will play a critical role in determining the liability question in this matter. In reviewing the evidence on summary judgment the Court may not make any credibility determinations or weigh any evidence. *Moore v. Willis Independent School District*, 233 F.3d 871, 874 (5th Cir. 2000).

Construing the evidence in the light most favorable to the non-movant, as the Court is required to do in analyzing a motion for summary judgment, the Court concludes that the statements cited from Mr. Pahlkotter's deposition and affidavit constitute evidence sufficient to raise a genuine issues of material fact with respect to Darrick Livas Jr.'s comparative fault. Mr. Pahlkotter's statements raise issues with respect to whether Mr. Livas saw what he should have seen in connection with Mr. Pahlkotter's change of lanes; whether Mr. Livas acted in a manner that could be reasonably perceived and construed to indicate that he was going to allow Mr. Pahlkotter to merge into the left lane, and whether Mr. Livas accelerated his vehicle and steered towards Mr. Pahlkotter's vehicle. The Court does recognize that Mr. Pahlkotter changed lanes and received a citation and that in all likelihood the task of the factfinder will be determining if there is

comparative negligence on behalf of Darrick Livas, Jr.  Accordingly, because there are genuine

issues of material fact, the Court DENIES the motion for partial summary judgment.

New Orleans, Louisiana, this <u>3rd</u> day of July, 2013.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE