UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DARRICK LIVAS, SR., DARRICK         CIVIL ACTION
LIVAS JR., CANTRELL LIVAS AND
DERRICK WALKER

VERSUS                              NO. 12-912

ACE AMERICAN INSURANCE              SECTION "K"(5)
COMPANY, HEARTLAND EXPRESS.
INC. OF IOWA AND RYAN
PAHLKOTTER

## ORDER AND OPINION

Before the Court are the "Motion in Limine to Strike Testimony of Dr. Monroe Laborde" filed on behalf of plaintiffs Darrick Livas, Sr., Darrick Livas, Jr., and Cantrell Livas" (Doc. 27), and the Motion in Limine" filed on behalf of plaintiff Derrick Walker (Doc. 28). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, the Court denies the motion in part and grants it in part.

Background

Darrick Livas, Sr., Darrick Livas, Jr., Cantrell Livas, and Derrick Walker filed suit against Ryan Pahlkotter, Heartland Express Inc. of Iowa, and Ace American Insurance seeking damages for injuries allegedly sustained when the automobile driven by Darrick Livas, Jr., in which the other plaintiffs were passengers, was involved in an accident with an 18-wheeled truck owned by Heartland Express Inc. of Iowa and operated by Ryan Pahlkotter. Following the accident each plaintiff sought medical treatment for various injuries alleged to have been sustained in the accident. Defendants engaged Dr. J. Monroe Laborde, to perform independent medical examinations on Darrick Livas, Sr., Cantrell Livas, and Derrick Walker.

In a medical report dated may 10, 2012, Dr. Laborde opined about Darrick Livas, Sr. that "[o]bjective testing is consistent with the aging process and does not show objective evidence of injury, impairment or indication for surgery.  Recommended treatment would be non-narcotic medication, exercise, and return to work.  Surgery is not recommended." Doc. 33-2, Ex. 2, Attachment 2.   In a subsequent medical report issued May 22, 2013, entitled "Orthopaedic Biomechanics," Dr. Laborde stated

> If crash data is available such as repair estimates of vehicles, accident reconstruction could be performed to determine probability of injury due to energy impact.  Rear and side collisions with change in velocity below 10 MPH are unlikely to cause injury."
>
> The patient could have sustained soft tissue injuries which 90% should return to pre-existing status in six weeks to a reasonable medical certainly.  It there are symptoms after three months they would be unlikely to be causally related to the automobile accident of May 16, 2011.  Aging process changes and/or psychological factors would be a more likely cause for his symptoms beyond three months after automobile accident.  Surgery is not recommended.

Doc. 33-2, Ex. 2.

Dr. Laborde noted in his May 17, 2012 medical report concerning  CANTRELL Livas that he "does have a lawyer and depression and takes narcotic medication which are statistically associated with pain from psychological causes." Doc. 33-2, Ex. 2, Attachment 3. Dr. Laborde also noted that he had not seen objective evidence of injury." Id.  In the portion of the report entitled "Orthopaedic Biomechanics" Dr. Laborde stated:

> If crash data is available such as repair estimates of vehicles, accident reconstruction could be performed to determine probability of injury due to energy of impact.  Rear and side collisions with change in velocity below 10MPH are unlikely to cause injury.
>
> The patient at most would have sustained soft tissue sprain type injuries which 90% heal in six weeks to a reasonable medical

> certainly. If there are symptoms after three months they would be unlikely to be casually related to the automobile accident of May 16, 2011. Aging process changes and/or psychological factors would be a more likely cause for his symptoms beyond three months after automobile accident. Surgery is not recommended.

Id.

After examining Derrick Walker, who reported, among other symptoms, pain in his left knee and left shoulder, Dr. Laborde noted in his May 13, 2012 report concerning Mr. Walker that "[t]he patient has a lawyer and takes narcotic pain medication which are statistically association with non-organic pain." Doc. 33-2, Ex. 2 Attachment 4. Under the "Orthopaedic Biomechanic" section of the report, Dr. Laborde stated:

> Impact automobile accident from the right would more likely cause injury to the right shoulder and knee than it would the left. If crash data is available such as repair estimates of vehicles, accident reconstruction could be performed to determine probability of injury due to energy impact. Rear and side collisions with change in velocity below 10 MPH are unlikely to cause injury.

Id.

Plaintiffs seek an order excluding Dr. Laborde from testifying as an expert in the area of orthopaedic surgery urging that he is "obviously biased." Doc. 27-1, p.1 Additionally plaintiffs move to exclude Dr. Laborde from testifying as an orthopaedic biomechanical expert contending that he is not competent to testify as such and that "he has not reviewed any documents to support any opinion he may attempt to testify about." Id.

Law and Analysis

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence." *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702, governing the admissibility of expert

3

testimony, states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797. The second prong, i.e., whether the proposed testimony will assist the trier of fact to

4

understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 U.S. at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.,* citing *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Dr. Laborde is a board certified orthopaedic surgeon. He has been engaged in the practice

5

of orthopaedic medicine for approximately forty (40) years. Additionally, Dr. Laborde earned a Masters in Biomedical Engineering in 1976. From August 1979 until June 1981 Dr. Laborde worked as an assistant professor in the Department of Biomedical Engineering at Vanderbilt University. He has worked from March 1992 until the present an adjunct assistant professor in the Department of Biomedical Engineering at Tulane University, where he also serves on the Board of Advisors for the Biomedical Engineering Department.

In general, plaintiffs seek to exclude Dr. Laborde's testimony urging that he has a bias against personal injury plaintiffs. The Court acknowledges that on five previous occasions, state court judges have denied a defendant's motion to compel a plaintiff to undergo an independent medical examination by Dr. Laborde[1] or found his testimony "not completely credible."[2] However, the Court finds those cases insufficient to establish that Dr. Laborde is biased against personal injury plaintiffs. Plaintiffs' counsel will have the opportunity to vigorously cross-examine Dr. Laborde with respect to whether he has a bias against personal injury plaintiffs. It is within the province of the jury to evaluate the credibility of Dr. Laborde's testimony, including whether he has a bias against personal injury plaintiffs, and to determine the weight, if any, to be given to that testimony.

Plaintiffs also seek to exclude Dr. Laborde's testimony to the extent that he renders opinions as an expert in orthopaedic biomechanics. Dr Laborde credentials qualify him an expert in

---

[1] *Rineer v. Griffith*, No. 2002-10985 Civil District Court for the Parish of Orleans (August 28, 2003) (motion to compel independent medical examination by Dr. Laborde denied due to Dr. Laborde's "documented history of bias against personal injury litigants); *Boudousque v. Broach,* No. 540-187, 24th Judicial District Court for the Parish of Jefferson (April 3, 2002); *Buckholz v. Maryland Casualty Co.*, No. 20 03-11612, Civil District Court for the Parish of Orleans (June 22, 2004).

[2] *Dupre v. Aviara Energy*, 55th Judicial District for the Count of Harris, State of Texas.

orthopaedic surgery with a specialty in orthopaedic biomechanics. Despite that conclusion, Dr. Laborde will not be permitted to offer expert testimony in the area of orthopaedic biomechanics. Dr. Laborde's medical reports regarding the plaintiffs indicate that he has not expressed any orthopaedic biomechanical opinions. Dr. Laborde's statements that "[i]f crash data is available such as repair estimates of vehicles, accident reconstruction could be performed to determine probability of injury due to energy of impact. Rear and side collisions with change in velocity below 10 MPH are unlikely to cause injury" are not expert declarative orthopaedic biomechanical opinions. Those general statements are not based on any information specific to the accident at issue. At the time Dr, Laborde issued his reports, he had not reviewed any photographs of the vehicles involved in the accident nor had he conducted any independent research or analysis with respect to the accident.

 Recently, in furtherance of defendants' opposition to these motions in limine, Dr. Laborde executed an affidavit in which he identified sources supporting his prior statements in the plaintiffs' medical reports that a change in velocity (Delta V) below 10MPH in side and front impact collision is unlikely to be the cause of injury or the persistent complaints exhibited by each of the plaintiffs. Doc. 33-2, Ex. 2, p.4. Dr. Laborde's affidavit also states that after completing his prior reports he reviewed the reports of Dean Tekell, defendant's accident reconstruction expert, in which Mr. Tekell opined the accident resulted in a Delta V between 3.4 miles per hour and 6.8 miles per hour, which is a low Delta V. Dr. Laborde then opined that his "research, knowledge, education, training, and experience have shown that a Delta-V of less than 10 miles per hour in a side impact collision is unlikely to cause injury or the persistent physical complaints exhibited by each of these patients. Therefore, I am of the opinion that the accident at issue has a low probability of causing the injuries complained of by Derrick [sic] Livas, Sr., Cantrell Livas, and Derrick Walker." Id. at p. 5.

7

    Because the Court has previously determined that Dr. Laborde's medical reports do not state any orthopaedic biomechanical opinions, the Court cannot construe Dr. Laborde's affidavit as a supplemental expert report under Rule 26(e)(2) of the Federal Rules of Civil Procedure, and must therefore construe it as an initial expert report.  Rule 26(a)(2)(B)(i) of the Federal Rules of Civil Procedure provides that, except under circumstances not applicable here, a witness who is to provide expert testimony must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them."  The Court's Scheduling Order mandated that defendant provide "[w]ritten reports of experts, who may be witnesses for Defendants fully setting forth all matters about which they will testify and the basis therefor shall be obtained and delivered to counsel for Plaintiff as soon as possible, but in no event later than **May 13, 2013**."  Doc. 8, p. 3.  Dr. Laborde filed his affidavit June 18, 2013, more than a month after the deadline.  Thus, Dr. Laborde's expert orthopaedic biomechanical opinions were not timely filed.  Therefore, Dr. Laborde may not testify concerning any orthopaedic biomechanical opinions expressed in his affidavit.

    New Orleans, Louisiana, this 12th day of July, 2013.

                                                                STANWOOD R. DUVAL, JR.
                                                                UNITED STATES DISTRICT JUDGE